Good morning, Your Honors. I'm Alexander Christy. I am the attorney for the petitioner, and I would give the allotted time on behalf of the petitioner to be argued by the amicus counsel in this matter. Thank you. Thank you. Good morning. Good morning. May it please the Court, Aaron Murphy of Latham & Watkins, appearing as a specially appointed amicus counsel on behalf of petitioner Emil Natta. I'm going to try to reserve three minutes for rebuttal. I know it's my obligation to watch the clock, but it's my goal at the outset in any event. Mr. Natta seeks asylum and withholding of removal on three grounds. First, that he's suffered past persecution at the hands of the Islamic group, which is a known terrorist organization in Egypt. And it's a group that the government, at least in this case the local police, were unwilling or unable to control. And based on that, he's entitled to the presumption of a well-founded fear of future persecution. Why do you base your allegation that the local government is unwilling or unable to control the Islamist group? Well, Natta contacted the local police on three occasions during this escalating violence against him. He contacted them in response to the fire that was set in his apartment, and the police refused to respond. Said, well, if you don't have the names of the people who fire-bombed your house... Can you really call that a refusal to respond? I mean, if you don't have the names, what exactly are they supposed to do? Well, I think responding to an arson is a typical police response. I mean, to call the police and say, you know, someone just launched an incendiary projectile into my apartment and it burst into flame, and another person broke down the door and ran in with a torch and began setting whatever he could set on fire, definitely a criminal act. I mean, the IJ in this case even said, you know, these are unfortunate criminal acts that Natta suffered. My house has been burglarized three times. Police have never caught the person that did it. Indeed, they didn't even come out to the house once. Am I being persecuted and the government's unable to protect me? Well, I don't... there's more going on. My point is, you know, random acts of criminal activity happen. This may not have been random, but it's still basically criminal activity in an isolated episode. How does that amount to persecution that's to be attributed to the government, or how is it we're supposed to conclude the government is either in cahoots with the Islamic group or is unable or unwilling to control it? Well, you know, these situations where the Islamic group essentially identifies somebody who achieves some kind of higher profile than your average parishioner are very common in Egypt and in Islamic countries generally. The Islamic group, you know, told Natta... What's the best evidence in the record that shows who started the fire in Natta's apartment, did so because of efforts, his involvement with the Coptic church? Well, I think it's Natta's testimony that the individual who called him and issued the kidnapping and death threat against his children identified himself as one of the people who started the fire and said to him, look, your only solution here is to convert to Islam. You know, that's credible testimony in the record. The IJ made a credibility determination. I think we have to accept that at face value and accept that that's true. And when you have your persecutors self-narrating and identifying their motives for their actions and you testify to that and the IJ says, yeah, I find this credible, I just, you know, for whatever reason, including it has nothing to do with religion, you know, we submit that no reasonable fact finder can reach that conclusion on this record. But I don't think there's disagreement that the events... Has there been any episode before he got involved with the, basically broke up the girlfriend-boyfriend relationship? No. So it sounds like it has more to do with breaking up the girlfriend-boyfriend relationship than religion itself. Now, you can argue and will argue that religion plays a role in that, but religion in a generic fashion, he received no abuse, he does not allege any persecution until we get to the particular episode with the social relationship. That's right, but this isn't really a social relationship. I mean, this episode in stopping the young Christian girl from getting involved in and ultimately marrying this Muslim boy is a quintessentially religious episode here. I mean, Nader would have absolutely no interest in this love life of the young Mary were it not for the religious implications of this relationship. But I suspect his abusers wouldn't have any interest except that somebody's girlfriend's been taken away from him. Well, you know, I respectfully disagree with that characterization. I think what's going on here is essentially a religious battle between the Coptic Christian Church and this Islamic group. I mean, it's essentially a battle for the hearts and minds of parishioners. I mean, the goal of converting young Christian girls, especially poor ones like Mary, is a well-known goal. It's even spoken to in the State Department reports that that's a tactic used by these fundamentalist Islamic groups to woo people away from the Coptic Christian Church. So certainly from the perspective of Mr. Nader and the Islamic group, this was a religious dispute. This really wasn't about the relationship. Is there anything in the record that would show the Egyptian authorities have commenced proceedings against Nader under Article 98 for contemplating commencing? Well, Nader testified that his father was interrogated by the State Security Police. And the IJ actually did find in her recitation of the facts that his case had been referred to the State Security Police. Now, beyond that, we don't have the warrant that was purportedly issued for his arrest, and we don't have the charging documents, obviously. But the understanding, based on the State Department reports and other things that human rights groups and others have put forward, is that the function and role of the State Security Police is to deal with these kinds of religious disputes. And the tools that they use to do that are Article 98 and the emergency law. Well, let's say if I were to agree with you that this record compels the finding of past persecution, is then the remedy then to go back to the IJ to continue on in that? Because everything, I mean, if you find past persecution, then that changes how you look. You know, you're entitled to the presumption. It changes how you look at everything therefore. Well, I don't think a remand is necessary in here. Well, of course you don't, but, you know. The IJ did, I mean, she made a ruling on well-founded fear. She said, in reciting her facts, she said, look, I find you credible that these events that happened after you left the country happened. She was just, you know, wedded to her conclusion that none of these things have anything to do with religion. So I think if you... But if you did find that she did show past persecution, then how you view everything future changes, doesn't it? Because you go forward with a presumption. Well, you go forward with a presumption, but I don't think that there's anything left for the IJ to adjudicate here about the events that happened afterwards and about the effect of the presumption. Well, except for, you know, that, I mean, if you have a presumption, then how you look at things, you know, future, and then obviously change country conditions, too. Right. Well, and, you know, in shifting gears, I mean, we don't rely exclusively on the presumption. I mean, I think this case actually is on all fours with the Malti v. Ashcroft decision, which is a decision that found an objectively reasonable, well-founded fear of future persecution based solely on activities that happened to the petitioner after he fled Egypt. And, you know, that was a case where the events that happened to Malti's family bear a striking resemblance to the events that happened to Nada's family. You know, for example, in Malti, Nada's father's business was destroyed. Here, Nada's brother's business was destroyed, his brother-in-law. Nada, one of Malti's brothers, was beaten. Nada's sister-in-law was beaten, and it indicates in the record that she may still be suffering permanent damage from that beating. The family apartment was ransacked. Here, Nada's father's apartment was searched three times, and his religious papers were confiscated, and Nada's father was interrogated by the police upon a fourth occasion. The police twice refused to respond to calls for help from Malti. Three times they refused to respond here. And there was only a rumor on the streets that Malti would be arrested if he returned to Egypt. Here, the state security police have essentially told Nada's father that a warrant's been issued for his arrest, and they're actively looking for him. And based on that, you know, this Court found that that established a prima facie case of well-founded fear of future persecution. And Malti was remanded only for the determination of whether Malti could testify credibly to those facts. And we already have that determination here. And so based on Malti, I think the panel can reach the conclusion that he's independently established a well-founded fear of future persecution, separate and apart from the past persecution issues. Did you want to reserve the balance of your time? I would. I would. Thank you. May it please the Court. My name is Nicholas Bagley for the Attorney General of the United States. I'd like to begin today by speaking to the limited nature of the remedy the government seeks in this case, which is to say a remand back to the Board to consider whether mixed motives might have played a role in the persecution the Petitioner faced. I believe a remand is particularly appropriate here for three independent reasons. First, remand is particularly appropriate because the case is going to have to be remanded anyway, for at least three reasons. First, as both of you alluded to, neither the IJ nor the Board has made a determination as to whether or not the perpetrators of the persecution here were unwilling or unable to ‑‑ the Egyptian authorities were unwilling or unable to control the actions of the persecutors here. Second, neither the IJ nor the Board allowed the government to carry forward a burden of showing whether or not Mr. Nada could relocate within Egypt upon his return. And third ‑‑ Well, let's say if I disagreed with you and said that I think that this record compels a finding of past persecution, then you wouldn't need the remand for mixed motives, right? Well, it ‑‑ Because mixed motives says that you don't have past persecution, doesn't it? I mean, you're looking ‑‑ you've got to have the ‑‑ your ‑‑ Well, respectfully, I think that if you remanded on the mixed motives point, you'd still want to know whether or not the Egyptian government was unwilling or unable to control the actions of the persecutors. In other words, even if you believe that the persecutors here are a private group that is at odds with the Egyptian government, even if you believe that the private group were engaging in acts that amounted to persecution on religious grounds, even in that case, you'd still have to remand for a determination of whether the Egyptian authorities had anything to do with this. And even if you believe that there was past persecution, in other words, that there was a presumption going forward, I do believe that the government should have the opportunity to say, Look, if Petitioner returns to Egypt, he can relocate and live safely. Or, look, country conditions have changed sufficiently from the time that Mr. Natta left. He should have the opportunity to make that case going forward. I should also note that I don't believe the court has jurisdiction to address the mixed motives question. And I say that because the IJ here rested her conclusion, rested her case entirely on the finding that this was not on account of religion, period, full stop. Then the papers were filed with the board. No mention was made of the on account of point. The filing to the board is spare, but it doesn't really make that argument, neither did the filing to this court, which is virtually identical to that made before the board. So I respectfully submit that even if this – even if Your Honor believes that this shows past persecution, I think it's imperative to send it back down to the IJ or at least – or in the alternative, to deny the petition, because this was not raised. Now, let me just make sure I understood exactly what you said, Counsel. So you said that the issue of past persecution was not raised on appeal to the BIA? I think the issue of whether or not the persecution was on account of religion was not squarely raised to the board. I – you know, if you go through the blue brief that Your Honor has in front of you, it's virtually identical to the brief I've given to the board. There it talks about – you know, even the very first thing it says is that asylum can be demonstrated by showing that persecution is on account of, and it includes an ellipsis and says political beliefs. There's no mention of religion, except in describing the events that occurred. But it's not hard to listen to you. In the notice of appeal to the BIA, it says respondent was found credible, and the evidence in the record, including his testimony and the expert's testimony, showed respondents past persecution and well-founded fear of persecution. Isn't that enough to encompass what you're saying wasn't there? Well, Your Honor, I respectfully disagree that it is. And what I go back to here is sort of an opportunity for full and fair opportunity for the board to consider this claim. It was mentioned in the notice of appeal. That's true. Whether or not that was an adequate opportunity, it seems to me that we wouldn't topple an administrative decision in a way that would make it feel like we were playing a game of gotcha with the board. Again, the government here is asking to give the board a chance to consider whether it makes sense. This is not gotcha with the board. I mean, they didn't just fall off a turnip truck. They know exactly what the issues are in this case. With respect, Your Honor, I think they knew exactly what the issues were presented in the brief that was handed to them. And I believe the brief that was handed to them didn't squarely present the basis – didn't challenge the basis for the IJ's decision. The basis for the IJ's decision was that this was – So what did it – so what did it challenge? The brief that was brought before the board challenged – said two things. It said the acts that occurred were enough to amount to persecution. In other words, the firebombing, the attacks, those would amount to persecution. This was not simple harassment. It also said that Mr. Nonato would be subjected to persecution under Article 98F. At no point did they say this was on account of religion. Now, it's true the recitation of the facts goes through all the facts that you have in front of you. And it's also true that that's – it's pretty clear that that's the basis for the IJ's decision. But just as this Court doesn't review district court opinions in a free-floating way, just based on what you believe the record shows, you look to the papers that were filed. And here the board said, look, Petitioner didn't challenge the basis for the IJ's decision. This is a summary affirmance. That's easy. And, you know, I should go back to the – to note that the government here is not asking for an – for a denial of this petition outright. We are asking this case to be remanded so the board can make a more thorough investigation into this mixed-motives claim. Well, is there anything in the record that supports the IJ's description of the fire and not as a – as a random criminal act? Because there's certainly a lot of circumstantial evidence around it. I do. You know, I read that reference to a random, unfortunate criminal act as being connected to the thrust of the IJ's opinion, which is this is not on account of religion. I think she used the word random not to refer to unconnected to activities with Mary, because I think you're correct that there's a lot of circumstantial evidence to suggest that this had everything to do with breaking up this young couple. But that random implied, look, this just didn't have anything to do with your religion. This had to do with your acts. It was not targeted at you because you were a Coptic. Well, but – So – Go ahead. I'm sorry. What exactly are you asking us to do then with this case? The government is asking that the Court remand this case back to the Board to give it an opportunity to consider the mixed motives analysis in the first instance. Okay. But if we did that, doesn't – but let's say I believe that this record compels a finding of past persecution. Then that wouldn't be what I would remand it for. Is that correct? Because doesn't – wrapped up in the mixed motive, isn't that analysis dependent on concluding that the petitioner has not shown past persecution on account of religion? I believe that if you believed you had jurisdiction to send it back down – I mean, sorry, you had jurisdiction to address the mixed motives issue and you believed it established past persecution, then yes, of course, Your Honor, could decide that issue and send it back down to give the Board an opportunity to consider a narrower range of issues. Well, let's say if I believed that it showed past persecution, but I wanted to remand, then wouldn't my remand – I mean, I'm saying – obviously there's three of us here, and I'm not – and I'm opposing this as a hypothetical. But then wouldn't the remand be to determine the likelihood of future and then go all along all of those steps? I think that's right. I would submit that the past persecution – I know you don't agree with that. No, no, no. I think if you believe that there was past persecution based on mixed motives shown, you could send it back down for that. I do believe the government would still have an opportunity to show the unwilling or unable-to-control point and to rebut the presumption of a well-founded fear of future persecution. But, yes, I think in essence that's exactly correct. Let me raise another point that you note in your brief but appears to be something that case law discourages us from considering, and that is the petitioner's at least initial inability to recall that he'd been in the United States before. And, indeed, when he was in the United States, he was arrested. In most contexts, that would be considered a howler, something that would speak to the petitioner's credibility. It was not something which the IJ found a basis to determine that the petitioner was not credible. To the contrary, the IJ specifically accepted the petitioner's testimony and explained why she did not disbelieve the testimony because of this episode. You bring it up in your brief. What are we supposed to do about it? I believe it's irrelevant to this Court's decision in this case. Are we entitled to consider it if the IJ did not find the petitioner not credible? The IJ did not find the – in other words, because the IJ found the petitioner credible, I believe this Court, unless you are – no, I believe this Court can't consider that. Are we allowed to consider a basis for rejecting the application not relied upon by the agency? No. I believe that Inez Ventura says you need to remand back to the agency to give it an opportunity to consider. But it did consider this episode. And it accepted that credibility determination. And unless that credibility determination is subject to challenge, and I don't believe either side is challenging it. So I come back to the question, what are we supposed to do with this fact that you put in front of us in the brief? Respectfully, Your Honor, I think you can ignore it. Okay. If this Court has no further questions, we're prepared to rest on our briefs. I would ask that the petition be remanded on the asylum and withholding removal points, and that it be denied with respect to the Convention Against Torture claim. Well, if – just on that briefly. If we were remanding it, and let's say we said – let's say if we were to find that past persecution is present here and that we were compelled to find that, wouldn't that then just vacate the rest of it and then you just – because the way that I.J. did it, you know, it's sort of a house of cards. One falls on the – that, you know, when you get to the point that you say that someone's not entitled to, you know, asylum, then you say, well, the Convention Against Torture has a higher standard, and therefore it wasn't really an independent evaluation. It was just it falls with the – you know, it sort of collapsed with the prior finding. I think the withholding removal point, that's exactly correct. I think the I.J. did make an independent investigation into the C.A.T. claim, and that's evident from her discussion of the basis for her decision, which was that, you know, upon your return to Egypt there is simply no indication that you'll be subject to torture because that's just – it's not sufficiently common in Egypt to make that a realistic and a meaningful risk. So I believe that the C.A.T. claim is sufficiently separate. I do agree with you on the withholding of removal claim. Okay. Thank you. Mr. Butler? I just have a couple of quick points. You know, first of all, to Judge Trott's questions, there's no preservation issue here at all. Nod has told the same story from day one. He applied for asylum almost from the minute he got to the United States. And from his affidavit forward, the facts haven't changed. And it's been evident to everyone who's looked at this case exactly what the basis for his claims are. And the notice of appeal clearly states he's appealing past persecution. And the Laha case here in the Ninth Circuit says that that's all you have to do. Even if the briefs are poorly done or even if no briefs are filed at all, that still counts for preservation purposes. On the remand issue, I agree with you, Judge Callahan, that mixed motives is not a basis to remand here. I mean, even the Gafford case, which the government relies on as part of its remand argument, doesn't remand on mixed motives because it's a remand that is a distinction without difference if you decide there is past persecution. The on-account of element is satisfied whether it's a mixed motive or a full motive. But to remand on the issue of future persecution, though, I don't think is necessary. The judge made a credibility determination based on the facts that I walked through earlier that would relate to the Malte opinion. But Malte came out a few months after the I.J.'s decision here. The I.J. didn't have the benefit of that holding. But under Malte, there's a prime official case here. And the only distinction, as I mentioned, is that NADA has testified credibly to those facts and the I.J. found them credible. And so based on that, the panel really can just divorce the past persecution issue and focus solely on that and issue the petition based on Malte. So exactly what do you want us to do? I'd like you to grant the petition based on Malte and the independently established well-founded fear of future persecution. I'd also like the determination. What about changed country conditions? What do we do with that allegation? Well, you know, I point the court to Nehru, which describes, you know, these kind of general changed country condition reports that the government has offered here. It says, look, when you have an individual like NADA, a petitioner, where you have specific credible evidence pointing to the persecution that he has suffered, general claims of country conditions need to be tied to the individual petitioner to show how those general claims really are going to apply to and affect him. Because here you essentially have somebody, he's already on the list. The state security police are already looking for him. And so comments about how Coptic Christians who haven't stood out from the crowd in any way are able to go to church and, you know, live their lives, you know, in a sense in quiet desperation because there's obviously a lot of discrimination there, those really don't speak to people like that. I think there's a problem there. If you move from a case for past persecution based on what happened because of the Islamic group to move to a case for future persecution because of the government is a leap. The second doesn't necessarily follow from the first. And I don't know that the independent basis for saying the government is out to get him is particularly good. Frankly, the fact that the episode is reported would suggest you want the authorities to investigate. He complained the police didn't do anything. The police asked state security to look into it. He's fled the country. So it's not really a surprise to me that state security might want to find him. That doesn't mean they're going to persecute him. Well, but, Your Honor, I respectfully and I would disagree with that characterization. We have we're going to file a 28-J letter later today with some recent testimony by the U.S. Commission on International Religious Freedom that notes very clearly that, and this is a quote, discrimination against restrictions on interference with and harassment and surveillance of members of non-Muslim religious minorities, particularly Christians, by the Egyptian state security services is standard practice. But you have nothing to link it to this petitioner. Well, other than the state security police, his case has been referred to them. And the I.J. found that. The I.J. agreed with that fact and found him credible in that fact. And the state security police are not in the business of looking for Catholic Christians who have fled the country simply to ask them to, you know, help investigate the fire that was in their apartment. That's not what the state security police do. The state security police enforce an anti-blasphemy statute that is designed to keep minority religions in line. And that's what that investigation would have to be about. We thank you for your argument. Thank both counsel, all three counsel, for their presentations. And the case just argued is submitted. And the next case on this morning's calendar is Yosef v. Mukasey.
judges: Trott, Clifton, Callahan